### Florence Vosburgh v. Daniel Kimball, Jr. and William Strohmeier

[285 A.2d 766]

No. 37-71

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 7, 1971

28

*Bloomer & Bloomer*, Rutland, for Plaintiff.

*William C. Sennett*, Bennington, for Daniel Kimball, Jr.

*Williams, Witten, Carter & Dollard*, Bennington, for William Strohmeier.

**Shangraw, J.** This is an action brought by the plaintiff alleging that defendant, Strohmeier, on or about the 19th day of October, 1967, wilfully and wrongfully impounded in his barn in Pownal, Vermont, two dogs owned by the plaintiff. The complaint also alleges that the defendant, Kimball, wilfully, wrongfully and maliciously shot and killed these dogs without authority of law.

Trial was had by jury in the Bennington County Court on February 2, 1971. At the close of plaintiff's case each defendant moved for a directed verdict. The motions were granted. Verdicts were accordingly directed and judgment entered thereon in favor of the defendants. Plaintiff has appealed to this Court for review.

On October 18th or 19th, 1967, the defendant, Strohmeier, was the owner and operator of two adjoining farms in Pownal, Vermont. The milking cows were kept on one farm. The dry cows were pastured on the adjoining farm. At about 6:00 p.m. defendant, Strohmeier, his wife and a hired man were engaged

in milking when eight dry cows came down the Middle Pownal Road, pursued by eight dogs. Some of the cows had been injured.

Six of the eight dogs pursued two or three cows into a hoghouse and grainery in the barn area. After stopping the cows, either Mr. Strohmeier or his hired man pulled down the door to this building, thereby securing six dogs therein. They were kept there overnight. The following day the defendant, Kimball, a constable for the Town of Pownal, and another person who assisted him, came to the Strohmeier farm to pick up the six dogs. While attempting to place the dogs in crates, two of the six dogs escaped and the remaining four were taken by Kimball and were on that date destroyed by him.

We shall first consider plaintiff's claim that her dogs were illegally impounded by defendant, Strohmeier. In so doing, it is Strohmeier's claim that the statutes relative to impounding beasts apply to dogs.

20 V.S.A. § 3381 reads:

> Each organized town shall maintain as many good and sufficient pounds as it may need for the impounding of beasts liable to be impounded. The pound may be kept in an adjacent town if the adjacent town consents and the poundkeeper may be a resident of an adjacent town. Each town may regulate the operation of its pound except as to matters regulated by statute.

Under 20 V.S.A., part 8, Chapter 191, relating to the general control of animals we briefly refer to some of its provisions. 20 V.S.A. § 3382 provides that a town may be penalized if, for a term of six months at one time, it is without such pound. The following section, 20 V.S.A. § 3383, permits a person wishing to impound a beast to use his barn or some other enclosure for that purpose if the town does not have a pound. 20 V.S.A. § 3411 permits a person to impound a beast found in his enclosure doing damage, followed by 20 V.S.A. § 3412 setting forth the poundkeeper's duties and liabilities. 20 V.S.A. § 3413 then goes on to state that the person impounding such beast, within twenty-four hours thereafter shall give notice thereof to the owner or person having the care of such beast, requiring him to appear at the dwelling house of the impounder within

twenty-four hours to appoint appraisers to fix the damage done by such beast.

There is no specific allegation of the nonexistence of at least one sufficient pound in the town of Pownal, and it is to be presumed, in the absence of a contrary showing that the town has obeyed the statutory mandate. *Dunbar* v. *Godbout*, 105 Vt. 448, 451, 168 A. 551 (1933).

In our consideration of the propriety of the trial court's action in directing a verdict in favor of the defendant, Strohmeier, whether or not a dog is a beast, as contemplated by the statutes above referred to, becomes immaterial. None of the impounding provisions of the statutes were resorted to, or complied with, by Strohmeier. The four dogs were picked up by Kimball and his companion at the barn of Strohmeier at about 11:00 a.m. the following day. The record clearly demonstrates that this defendant never intended to impound the dogs in question. See *Howard* v. *Bartlett*, 70 Vt. 314, 316, 40 A. 825 (1898). They were merely detained by him subject to suitable action by the authorities of the Town of Pownal. In so doing he acted in a reasonable and prudent manner by contacting constable, Kimball. The judgment in favor of Strohmeier should not be disturbed.

In October of 1967 the plaintiff owned four dogs. Two were hunting dogs, one of which, named "Pal", was black and tan, small size, and the other a Beagle, mixed breed, called "Sport". They were both licensed in the Town of Bennington, Vermont. These dogs were allowed to go out during the day. In the nighttime they were kept in the house.

We shall now refer to evidence introduced during trial of the case. At 8:00 a.m. on October 18th or 19th, 1967, both of the dogs were collared and tagged. Feeding time was 6 p.m., but on that evening neither "Pal" or "Sport" appeared. Sometime later plaintiff was informed that defendant, Kimball, had taken some dogs from the Strohmeier farm and had killed them.

When interviewed by the plaintiff, Kimball first stated that he had buried the dogs in the Pownal landfill dump. Plaintiff obtained permission from the selectmen of Pownal to dig up the dogs and was then told by Kimball that he had put the

dogs in a burlap bag, along with some rocks, and had thrown them in a river, which he identified. Plaintiff offered a reward of $100.00 which was later raised to $150.00 for information relating to the dogs and made arrangements to have skin divers go into the river to search for them. Before this search was made plaintiff received a telephone call from a boy who had found some dead dogs in a cellar hole off Route 346.

Four dead dogs were removed from the cellar. Two of them were "Pal" and "Sport". At that time none of the dogs had collars on them. Strohmeier testified that at the time Kimball took the four dogs one big black dog had on a collar. When asked as to whether any of the other dogs had any collars, Strohmeier replied "Not that I recall." In referring to the collared dog, this witness further testified, ". . . I said to Mr. Kimball, you probably can find the owner for that one, . . . ."

In addition to the foregoing evidence, Peter Donovan, a neighbor of the plaintiff in October of 1967, testified that he knew the plaintiff's dogs and that he never saw them when they were not collared. Henry Ehlers, also a neighbor of the plaintiff, testified that he had observed plaintiff's dogs and on each occasion that he saw them, they were collared. Kimball was not called as a witness.

20 V.S.A. § 3581 provides:

A person who owns, harbors or keeps a dog more than four months old shall annually on or before April 1 cause it to be registered, numbered, described and licensed . . . for one year from that day . . . , and shall cause it to wear a collar, and attach thereto a license tag issued by the town clerk . . . .

A related statute, 20 V.S.A. § 3621, states:

The selectmen of a town or a mayor of a city shall annually, within ten days from May 15, issue a warrant to one or more police officers or constables, directing them to proceed forthwith to kill or cause to be killed all dogs within the town or city, not licensed and collared according to the provisions of this subchapter, and to enter a complaint against the owners or keepers thereof.

The following statute, 20 V.S.A. § 3622, requires that the police officer or constable to whom it is directed is commanded forthwith to kill or cause to be killed all dogs not duly licensed and collared according to law and make a return of the warrant, and doings thereon, within sixty days from the date hereof. Here, a warrant was not issued to defendant, Kimball, until August 3, 1967, nor was a return made by him of any dogs killed as commanded in the warrant and by the statute.

Our legislature extended the police power of the state with regard to dogs in the enactment of 20 V.S.A. § 3624, which provides as follows:

> A person may, and every police officer and constable shall humanely kill, or cause to be killed such dogs whenever and wherever found and shall bury or otherwise properly dispose of their remains . . . .

The word "such" appearing in 20 V.S.A. § 3624 undoubtedly has reference to dogs not registered or wearing a prescribed collar as required under the provisions of 20 V.S.A. § 3581. Non-compliance with 20 V.S.A. § 3581 affords no protection to dogs. *McDerment* v. *Taft*, 83 Vt. 249, 251, 75 A. 276 (1910) ; *State* v. *Kelley*, 86 Vt. 237, 238, 84 A. 861 (1912).

The *McDerment* case, *supra*, 83 Vt. at 250–51, holds that the failure of the owner to license and collar a dog, as required by 20 V.S.A. § 3581 is a complete defense to an action against a private person for shooting an uncollared dog, even though the collar was lost without fault of the owner. The *Kelley* case, *supra*, 86 Vt. at 238 squarely holds "(t)he want of a collar justified the officer in killing the dog." Unlike these two cases, however, the question of whether the plaintiff's two dogs were collared was disputed in the case now considered. At best, the defendants evidence as to whether the plaintiff's dogs were collared was equivocal.

More important, the one person who had the best opportunity to know whether or not the dogs were collared was the defendant Kimball. Before he killed the animals it was his duty to determine whether the dogs had collars or not. Otherwise, he would be a wilful trespasser.

Kimball deemed it expedient not to take the stand and testify. His failure so to do, concerning a fact which was peculiarly within his knowledge, raised a strong inference which the jury could consider, that had he testified on this point, the evidence would have been unfavorable to him. *Choiniere* v. *Sulikowski*, 126 Vt. 274, 279, 229 A.2d 305 (1967) ; *Anderson* v. *Dutton*, 100 Vt. 464, 467, 139 A. 210 (1927).

By granting the motion for a directed verdict in favor of the defendant, Kimball, the trial court took the view that there was not sufficient evidence to justify the jury to find that plaintiff's two dogs, when picked up and subsequently killed, were collared as required by 20 V.S.A. § 3581.

█ █ A motion for a directed verdict cannot be granted if there is any evidence fairly and reasonably tending to justify a verdict. *Beaucage* v. *Russell*, 127 Vt. 58, 60, 238 A.2d 631 (1968) ; *Smith* v. *Blow & Cote, Inc.*, 124 Vt. 64, 66, 196 A.2d 489 (1963). On such motion by a defendant all conflicts are resolved against him and contradictions and contrary inferences are for the jury to resolve. *Berry* v. *Whitney*, 125 Vt. 383, 384, 385, 217 A.2d 41 (1966).

█ Where there is some evidence which tends to support plaintiff's case it is for the jury to consider, construe and decide the case according to the weight it gives to the evidence. *Hedman* v. *Siegriest*, 127 Vt. 291, 294, 248 A.2d 685 (1968).

Without further comment on the evidence referred to in this opinion, we are firmly convinced that the issue, as to whether or not one or both of plaintiff's dogs were properly collared, should have been resolved by the jury.

The Court erroneously granted Kimball's motion for a directed verdict and the judgment in his favor must be reversed.

*Judgment affirmed as to defendant, Strohmeier. Judgment reversed as to defendant, Kimball, and cause, as to him, remanded.*